W. S. CARTER et al. v. S. A. LONG et al.

*Ejectment—Effect of Satisfaction by Defendants in Ejectment of Judgment for Value of Land— Warranty— Mutual Warranties.*

1. Where, under section 484 of *The Code*, the plaintiffs in an action of ejectment elect to accept the valuation of the land fixed by the jury and the defendants satisfy the judgment, the effect of such satisfaction is to evict the defendants as heirs of an ancestor under whom they claimed and immediately to invest them with the title as purchasers from the plaintiffs and they thereafter do not hold as heirs of their ancestor.

2. In such case the defendants, having been evicted as claimants under their ancestor, may recover on the broken general covenant of warranty which a grantor had made to such ancestor and his heirs.

CARTER v. LONG.

3. Where there have been a conveyance and reconveyance of land with covenants of warranty, in order that they may cancel each other, they must be *like* covenants; therefore, where C. conveyed to S. with *special* warranty and S. reconveyed to C. with general warranty the covenants do not mutually cancel each other, and, upon eviction by a stranger under a paramount title, C. or his heirs may recover damages for the breach from S. or his heirs.

This was a SPECIAL PROCEEDING brought before the Clerk of the Superior Court of HYDE County, and, upon issues raised on the pleadings, it was transferred to the civil issue docket and tried before *Graves, J.*, and a jury, at Fall Term, 1893, of said Court.

The pertinent facts are stated in the opinion of Associate Justice BURWELL. .

The issues submitted to the jury and the responses thereto were as follows:

"1. Did David Carter convey to Caleb Spencer, as alleged by defendant? Answer, Yes, as set out in the deed, September 1, 1847.

"2. Did assets descend from the said David Carter to the plaintiffs, and to what amount? Answer, Real estate, $50,000; personal, $10,000 or more.

"3. What price did Caleb Spencer pay David Carter for the land? Answer, $1,250.

"4. What price did David Carter pay to Caleb Spencer for the reconveyance of the land described in deed of September 1, 1847? Answer, $3,000.

"5. Has the warranty in the deed from Caleb Spencer to David Carter been broken? Answer, Yes.

"6. What damages have plaintiffs sustained thereby? Answer, None.

"7. Has the warranty in the deed from David Carter to Caleb Spencer been broken? Answer, Yes.

"8. What damages have the defendants sustained by reason of the breach? Answer, None.

"9. Is the defendant S. A. Long, administrator *d. b. n.* of Caleb Spencer, indebted to the plaintiffs, and if so, in what amount? Answer, Nothing."

Upon the sixth, seventh and ninth issues his Honor charged:

"As to the sixth issue, your answer should be " None," for it is shown to you that David Carter conveyed to Caleb Spencer in 1847 with a warranty, and that the plaintiffs claim under David Carter, and they are not entitled to any damages, for they are estopped and rebutted by the deed of their ancestor." (To this part of the charge the plaintiffs excepted).

" Upon the seventh issue the defendants insist that they have shown that there was a better title than the Carters' in the Borden heirs, and that they established that better title. You will then answer that issue, Yes." (To this part of the charge the plaintiffs excepted).

"As to the ninth issue, under the rules of law estopping the plaintiffs and rebutting them, the defendant Long, as administrator, is not indebted to plaintiffs." (To this part of the charge the plaintiffs excepted).

There was judgment for the defendants upon the issues as found by the jury, and plaintiffs appealed.

*Mr. Charles S. Warren,* for plaintiffs (appellants).
No counsel *contra.*

BURWELL, J.: The plaintiffs are the heirs at law of David Carter. In the year 1847 he purchased of one Borden a tract of land containing one hundred acres and took a deed conveying said land to him in fee and containing full warranties. In 1847 he sold fifty acres of this land to Caleb Spencer (whose administrator and heirs are defendants in this action) and executed to him a deed in fee-simple, in

which deed he put the following words: "To have and hold the above described land with all the rights and titles I purchased of the said James W. Borden, and I hereby agree to warrant the right and title of the same from me, my heirs and assigns, forever." In the year 1851 Caleb Spencer conveyed to David Carter a tract of three hundred acres, including the aforesaid fifty acres, and in his deed put the following words: "To have and to hold the above described land and premises, together with all and singular the rights, privileges and appurtenances * * * to him, the said David Carter, his heirs and assigns, forever, and I, the said Caleb Spencer, do covenant and agree that I am lawfully seized and possessed of the aforesaid land and premises, and have full power to sell and convey the same in manner and form aforesaid, and do by these presents bind myself, my heirs and executors or administrators, to warrant and forever defend the same against the lawful claim or claims of any and all persons whatsoever."

David Carter had possession of this land at his death, holding the same under his deed from Spencer above mentioned, and his heirs held it when the children of James W. Borden brought suit in the year 1888 to recover the one hundred acre tract conveyed to David Carter in 1847, as stated heretofore, alleging that James W. Borden had therein only an estate for life, and that upon his death, which had occurred, the land became theirs. To that suit none of the defendants were parties. In that cause there was a verdict declaring that the plaintiffs (the Bordens) were the owners of the land; that the defendants (the Carters) unlawfully withheld the possession from them, and that the value of the land, "exclusive of betterments," was fifteen hundred dollars. The one hundred acres thus recovered by the Bordens included the fifty-acre tract conveyed, as heretofore stated, by Carter to Spencer, and by Spencer to

Carter. According to the provisions of section 484 of *The Code* the plaintiffs signified their election to accept the sum fixed by the jury as the value of the land, "exclusive of betterments," and therefor to relinquish their estate in the premises to the defendants, the Carter heirs. A judgment was entered in accordance with this verdict and election, and the defendants, the Carters, afterwards paid the same and thereby acquired the title that the Borden children had to the whole tract of one hundred acres. They seek here to recover one-half the sum so paid by them, and no more.

It is to be noted here that the legal effect of this judgment and its satisfaction by the plaintiffs in this action was to evict them from the land as heirs of David Carter, Spencer's vendee, and immediately to invest them with the title of the Bordens and their right of possession. Thereafter they held the land not as heirs of Carter, but as purchasers from the Bordens. The fact that they own and possess the land does not affect favorably or unfavorably their cause of action asserted in this suit. As heirs of Spencer's vendee they claimed the land. That claim proving ineffectual against the Bordens, as they allege, they have been forced to abandon that claim, and as heirs of Carter, Spencer's vendee, with full general warranty, they insist that, because of their eviction from the land, Spencer's covenant, made not only with Carter, but also with Carter's heirs, was broken, and immediately there arose in their favor a cause of action for damages, which they are asserting here.

It seems to be conceded by the defendants that if the plaintiffs were really evicted by those having a superior title the estate of Spencer would be liable to them for damages on the covenants contained in his deed to Carter but for the fact that Carter had himself conveyed the premises to Spencer, and their contention seems to be that the plaintiffs, being heirs of

Carter, are estopped by his deed to Spencer from bringing an action on the covenant in Spencer's deed to him.  Or, to put their contention in another phase, they seem to insist that these mutual covenants between Carter and Spencer in effect cancel one another.   This would no doubt be true if the covenants were alike.   For illustration: If A for one thousand dollars conveys land to B with general warranty, and B afterwards conveys it back to A for one thousand dollars with general warranty also, and A is evicted by a stranger whose title is paramount and who does not claim under B, the former (A) will not be allowed to maintain an action for damages on the covenant contained in B's deed to him.   One reason for this rule is the prevention of circuity of actions.   *Silverman* v. *Loumis*, 104 Ill., 137.   The recovery of A against B, if allowed under the circumstances detailed above, would itself give to B an identical cause of action against A.   To avoid such result the rule which is supported by the authorities above cited declares that the covenant in the one deed cancels that in the other. "Where, after a conveyance with covenants, the same premises are reconveyed to the grantor by his grantee with *like* covenants, the law construes such covenants as mutually canceling each other, so that no action can be maintained on them by either of the parties or their assignees."  2 Warville on Vendors, 429.   If the deed from Spencer to Carter had contained no warranty at all, it would yet have effected an extinguishment of Carter's warranty to him, for such a conveyance would have worked an assignment of Carter's obligation to himself, and a man cannot warrant land to himself or be an assignee of himself.   Coke on Littleton, sec. 743 ; *Brown* v. *Metz*, 33 Ill., 339.   But to effect this result they must be *like* covenants.   If A's covenant with B is a special warranty only against himself and his heirs, while B's covenant is a general warranty against all

CARTER *v.* LONG.

persons whatsoever, the eviction of A by a stranger, as stated above, works a breach of B's covenant with A, but no breach of A's covenant with B.    In such case A could recover of B, his covenant being broken, but then B could not recover of A, for his covenant had not been broken.

Applying what has been said to this case, we find that the covenant in Carter's deed to Spencer is not *like* that in Spencer's deed to Carter.    The latter's covenants, upon which the plaintiffs rest their action, is a full general warranty against all persons whatsoever.    The former's covenant is a special warranty against the covenantor and his heirs and against no one else.    The eviction of the Carter heirs by the Bordens, if the title of the latter was paramount as alleged, worked a breach of Spencer's covenant with Carter and his heirs.    That eviction did not work a breach of Carter's covenant with Spencer and his heirs and assigns, for the Bordens were strangers to Carter and to his title.

It follows from what has been said that there was error in the instructions given to the jury upon the sixth, seventh and ninth issues.    Upon the evidence introduced the seventh and eighth issues should not have been submitted to the jury, and, upon the facts established by the verdict on the third, fourth and fifth issues, there should have been a judgment for plaintiffs for the sum demanded in the complaint, that being much less than the purchase-money paid by Carter to Spencer.                            Error.